## *In re* COOPER, Petitioner.

ORIGINAL.

No number. Argued January 27, 28, 1891. — Decided February 2, 1891.

This court has jurisdiction to proceed, in respect to the District Court of the United States for the District of Alaska, by way of prohibition, under Rev. Stat. § 688; and therefore gives leave to file the petition for such a writ, and the accompanying suggestion in this case.

On the 12th day of January, 1891, *Mr. Joseph H. Choate* presented to the court a petition for a writ of prohibition to be directed to the judge of the District Court of the United States in and for the Territory of Alaska, and moved for leave to file the same. This petition was as follows:

" *To the Honorable, the Chief Justice and Associate Justices of the Supreme Court of the United States:*

" Comes now, Thomas Henry Cooper, a British subject, and gives this honorable court to understand and be informed —

"*That whereas*, by the law of nations, the municipal laws of a country have no extra-territorial force and cannot operate on foreign vessels on the high seas, and it is legally impossible, under the public law, for a foreign vessel to commit a breach of municipal law beyond the limits of the territorial jurisdiction of the law-making State;

"*And whereas*, the seizure of a foreign vessel beyond the limits of the municipal territorial jurisdiction for breach of municipal regulations is not warranted by the law of nations, and such seizure cannot give jurisdiction to the courts of the offended country, least of all where the alleged act was committed by the foreign vessel at the place of seizure beyond the municipal territorial jurisdiction;

"*And whereas*, by the law of nations, a British vessel sailing on the high seas is not subject to any municipal law except that of Great Britain; and by the said law of nations a British ship so sailing on the high seas ought not to be arrested,

seized, attached or detained under color of any law of the United States;

"*And whereas,* by the laws of the United States as well as by the law of nations, the District Courts of the United States have not, and ought not to entertain jurisdiction, or hold plea of an alleged breach upon the high seas of the municipal laws of the United States by the captain and crew of a British vessel, and can acquire no jurisdiction by a seizure of such vessel on the high seas, though she be afterwards brought by force within the territorial limits of the jurisdiction of said courts;

"*And whereas,* on the ninth day of July, 1887, there was between the governments and peoples of Great Britain and the United States profound peace and friendship, which relations of peace and friendship had happily subsisted for nearly three-quarters of a century before said ninth day of July, 1887, and still endure to the great comfort and happiness of two kindred peoples;

"*And whereas,* on the said ninth day of July, 1887, the schooner W. P. Sayward, a British vessel, duly registered and documented as such, and having her home port at Victoria in the Province of British Columbia, Dominion of Canada, and commanded by one George R. Ferry, a British subject, as captain and master thereof, was lawfully and peaceably sailing on the high seas, to wit: in latitude 54° 43' north, longitude 167° 51 west, fifty-nine miles from any land whatsoever, and then being fifty-nine miles northwest from Cape Cheerful, Oonalaska Island, upon waters between Oonalaska and Prybyloff Islands in Behring's Sea, as more fully appears by the chart in the record of the proceedings of the District Court of the United States in and for the Territory of Alaska hereinafter referred to ;

"*And whereas,* said schooner was at said time and place unlawfully and forcibly seized and arrested by an armed vessel of the United States Revenue Marine, to wit, the United States Revenue Cutter Rush, cruising under instructions of the Secretary of the Treasury of the United States for the sole purpose of enforcing the municipal law of the United States,

and the said British schooner was thereupon unlawfully, wrongfully and forcibly detained and seized, and was by force taken by the said Rush to the port of Sitka, in the territory of Alaska, United States of America, and within the territory of Alaska and the waters thereof and within the dominion of the United States in Behring's Sea;

" *And whereas*, the said British schooner being as aforesaid so unlawfully, wrongfully and forcibly seized on the high seas and without the limits of Alaska Territory or the waters thereof, and being so unlawfully, wrongfully and forcibly brought within the limits of Alaska Territory and the waters thereof; nevertheless a certain M. D. Ball, an attorney of the United States for the District of Alaska, not ignorant of the premises, but unmindful of the danger of disturbing the peace and harmony subsisting between the United States and Great Britain, did, by process out of the District Court of the United States in and for the District of Alaska, attach and arrest the said schooner W. P. Sayward, so as aforesaid wrongfully seized while lawfully sailing on the high seas under the protection of the law of nations, and so as aforesaid wrongfully and forcibly brought within the said port of Sitka in the territory of Alaska, and before the judge of the said District Court, contrary to the said laws of nations and the laws of the United States, did unjustly draw in plea to answer a certain libel by him, the said M. D. Ball, against the said schooner, her tackle, apparel, boats, cargo and furniture exhibited and promoted, craftily and subtilely therein alleging and articulating that the said schooner W. P. Sayward, her tackle, apparel, boats, cargo and furniture were seized *on the ninth day of July*, 1887, within the limits of Alaska Territory, and in the waters thereof, and within the civil and judicial District of Alaska, to wit, within the waters of that portion of Behring's Sea belonging to the United States and said District, and that all said property was *then and there* seized as forfeited to the United States for the following causes: That the said vessel and her captain, officers and crew were *then and there* found engaged in killing fur seal within the limits of Alaska Territory and in the said waters thereof in violation of section nineteen hundred and fifty-six

of the Revised Statutes of the United States, and that on said ninth day of July, 1887, George R. Ferry and certain other persons whose names were to the said attorney unknown, who were *then and there* engaged on board said schooner W. P. Sayward, as seamen and seal hunters, did, under the direction and by the authority of George R. Ferry, *then and there* master of said schooner, engage in killing, and did kill in the Territory and District of Alaska and in the waters thereof, thirty fur seals in violation of section 1956 of the Revised Statutes of the United States in such cases made and provided. *Without this*, however, and the said M. D. Ball not in any way alleging, or articulating, that the said seizure was made, or the said killing of seal was done within any river or bay of the United States, or within a marine league of the coast of any portion of the mainland, or any island belonging to the United States, or that the said vessel and her master and crew were subject to the laws of the United States sailing upon the high seas, or that any portion of the high seas beyond a marine league from the coasts of the mainland or adjacent islands was within the jurisdiction of the United States;

" *And whereas*, a demurrer by claimant filed on the fifteenth day of September, 1887, alleging the insufficiency of the libel, was overruled by the court on the said fifteenth day of September, 1887, and thereafter the claimant filed his answer specifically denying the allegations of the libel that the seizure aforesaid was made within the waters of Alaska Territory, or within the civil and judicial District of Alaska, or in any portion of Behring's Sea belonging to the United States, and specifically denying the allegations of the libel that the said vessel, her captain, officers and crew were *then and there* found engaged in killing fur seal within the limits of Alaska Territory, or in the waters thereof, or that any of them did kill any fur seal therein;

"*And whereas*, at the trial of said cause, the libellant, through its witnesses, by it called in that behalf, to wit, the captain and officers of the Rush, did make plain and clear to the court what was not clearly disclosed in the libel, that is to say, the place of the alleged offence, and the place of said

seizure; and did support the averments of the claimant's answer and by its evidence so offered in its behalf and not gainsaid in any way, did show that the place of the alleged killing of seal was without the limits of Alaska Territory or the waters thereof, and that the said seizure was not made, nor said killing of seal done, within the waters of Alaska Territory, or within the civil and judicial District of Alaska, or in any portion of Behring's Sea belonging to the United States, but that the place of the alleged offence, and the place of said seizure, was upon the high seas, to wit: in latitude 54° 43' north, and longitude 167° 51' west, fifty-nine miles distant from any land whatsoever, and fifty-nine miles northwest from Cape Cheerful, Oonalaska Island, upon waters between Oonalaska and Prybyloff Islands in Behring's Sea, which said testimony for libellant, as to place of seizure and place of alleged offence, was supported by that of the claimant. So that the judge of the District Court of the United States for the District of Alaska was fully informed that the seizure had been made and the alleged killing of seal done on the high seas without the limits of Alaska Territory or the waters thereof, and that said vessel was brought by force within the jurisdiction of said court, and that therefore, under the laws of nations and under the laws of the United States, he had, and could have, no jurisdiction of the alleged offence or of the vessel so as aforesaid unlawfully, wrongfully and tortiously seized without the jurisdiction of the United States and of the court, and so wrongfully and by force brought within the jurisdiction of the United States and of the court, yet nevertheless, being so fully advised, said judge of the District Court of Alaska aforesaid, did, on the nineteenth day of September, 1887, in contempt of the authority of the United States, in violation of the laws of the United States and of the law of nations, and to the great danger of the friendly relations happily subsisting between Great Britain and the United States, assert and attempt to exercise jurisdiction over the said vessel, the same being the vessel of a friendly nation at peace with the United States, knowing the same to have been unlawfully seized on the high seas without the jurisdiction of

the United States, and knowing the place of the alleged offence against a statute of the United States to be alleged and proved to be the same place as the place of seizure, that is to say, the high seas without the limits of the territory of Alaska or the waters thereof, and without the jurisdiction of the United States; all this the said district judge well knowing, he did find as fact the killing of fur seal on the ninth day of July, 1887, by the captain and crew of the aforesaid British vessel, the W. P. Sayward, at the said place of seizure as aforesaid, and did find as conclusion of law that such killing at such place on the high seas, to wit, at the said place of seizure in latitude 54° 43' north and longitude 167° 51' west, and fifty-nine miles from any land whatsoever and fifty-nine miles northwest from Cape Cheerful, Oonalaska Island, was in violation of section 1956 of the Revised Statutes of the United States, and by reason thereof the libellant was entitled to a decree of forfeiture of the said British vessel, her tackle, apparel, boats, cargo and furniture;

"*And whereas*, after said assertion of jurisdiction to condemn and forfeit said vessel, and before decree or sentence, the claimant did move the court to arrest the decree of forfeiture, and among other grounds did distinctly set up that the court had no jurisdiction over the subject matter of the cause, as shown by libellant's own testimony as to place of offence and seizure;

"Yet the said court did, nevertheless in contempt of the authority of the United States and in violation of the laws of the United States and in violation of the law of nations, and to the manifest danger of the peaceful relations of the two countries, assert and attempt to exercise jurisdiction in the premises; and on the nineteenth day of September, 1887, did make and enter a pretended decree of forfeiture to the United States of said vessel, her tackle, apparel, boats, cargo and furniture, and direct that unless an appeal be taken the usual writ of *venditioni exponas* be issued to the marshal commanding him to sell all said property and bring the proceeds into court to be distributed according to law, costs to be taxed and awarded against the claimants.

"*And whereas*, said Thomas Henry Cooper, being admitted as the actual owner of the said schooner W. P. Sayward, by order of the District Court to interpose as claimant did, in order to prevent the execution of said decree, take an appeal to this honorable court on the 26th day of April, 1888, and docketed the same on the 30th day of October, 1888, under No. 1037;

"*And whereas*, all matters of fact hereinbefore recited and alleged, save and except those of which this honorable court takes judicial notice, appear by the record and proceedings of the District Court of the United States in and for the Territory of Alaska;

"*And whereas*, the said appeal has been dismissed by this honorable court on the application of the claimant, appellant, himself, not only because he is advised that there is no appeal given to this court from the District of Alaska by the laws of the United States, but because he is advised that, the District Court being wholly without jurisdiction, its decree was and is a nullity, and this honorable court is fully authorized by section 688 of the Revised Statutes of the United States to prohibit any proceedings in the District Court for the enforcement of the same;

"*And whereas*, the said Thomas Henry Cooper is advised that in consequence of the dismissal of his appeal, according to the practice of this honorable court, its mandate will issue in due course without further consideration by this court, which said mandate would, in ordinary course, not only permit, but command the District Court of Alaska to proceed to execute its pretended decree of forfeiture, and it is therefore the duty of the said Thomas Henry Cooper, now here, to give this honorable court to understand and be informed of all and singular the matters in this suggestion recited and alleged, to the end that this court shall consider this application for prohibition before issuing its mandate, so that it may either frame a special mandate or take order that the ordinary mandate shall not reach the District Court before the writ of prohibition hereinafter prayed, or a rule to show cause why said writ should not issue, shall be served upon said court.

" Wherefore the said Thomas Henry Cooper, the aid of this honorable court most respectfully requesting, prays remedy by writ of prohibition to be issued out of this honorable court to the judge of the District Court of the United States in and for the territory of Alaska to be directed, to prohibit him from holding the plea aforesaid, the premises aforesaid, anywise concerning further before him, and to prohibit him from in any manner enforcing the said decree or sentence, or from treating the said decree as a valid sentence, for any purpose, or from taking any steps whatsoever in the cause aforesaid as to said decree or any matter or thing remaining to be done in consequence of said decree, and prohibiting him, the said judge, from making or entering any order, judgment or decree in and about the certain stipulation exacted and required in the course of said proceedings, and generally from the further exercise of jurisdiction in said cause, or the enforcing any order, judgment or decree made under color thereof.

" JOSEPH H. CHOATE,
" *Of Counsel.*"

" I have read the foregoing petition by me subscribed, and the facts therein stated are true to the best of my information and belief. JOSEPH H. CHOATE."

" Subscribed and sworn to before me this 12th day of January, 1891.

" OSCAR LUCKETT,
" [SEAL.] *Notary Public.*"

On the same 12th day of January, and at the same time, *Mr. Calderon Carlisle*, on behalf of Sir John Thompson, K. C. M. G., Her Britannic Majesty's Attorney General of Canada, presented to the court a suggestion for a like writ of prohibition. This suggestion was in every respect identical with Cooper's petition, except that the party presenting it was the Attorney General of Canada, and that the suggestion for the writ was in these words:

" Wherefore the said Sir John Thompson, K. C. M. G., Her Britannic Majesty's Attorney General of Canada, the aid of

this honorable court most respectfully requesting, for said Thomas Henry Cooper, submits to this honorable court that a writ of prohibition ought to be issued out of this honorable court to the judge of the District Court of the United States in and for the territory of Alaska to be directed, to prohibit him from holding the plea aforesaid, the premises aforesaid, anywise concerning further before him, and to prohibit him from in any manner enforcing the said decree or sentence, or from treating the said decree as a valid sentence, for any purpose, or from taking any steps whatsoever in the cause aforesaid as to said decree or any matter or thing remaining to be done in consequence of said decree, and prohibiting him, the said judge, from making or entering any order, judgment or decree in and about the certain stipulation exacted and required in the course of said proceedings, and generally from the further exercise of jurisdiction in said cause, or the enforcing any order, judgment or decree made under color thereof.

"And the said Sir John Thompson, K. C. M. G., Her Britannic Majesty's Attorney General of Canada, most respectfully informs this honorable court that the fact that this his suggestion is presented with the knowledge and approval of the imperial government of Great Britain, will be brought to the attention of the court by counsel duly thereunto authorized by Her Britannic Majesty's representative in the United States.

"CALDERON CARLISLE,

"*Counsel for Sir John Thompson, K. C. M. G., Her Britannic Majesty's Attorney General of Canada.*"

"I have read the foregoing suggestion by me subscribed, and the facts therein stated are true to the best of my knowledge and belief.          CALDERON CARLISLE."

"Subscribed and sworn to before me this 12th day of January, 1891.

"OSCAR LUCKETT,

"[SEAL.]          *Notary Public.*"

The court thereupon ordered that two weeks' time be al-

lowed to the Attorney General of the United States in opposition to the motion.

On the 26th of January, the day so appointed, the parties appeared and were heard on that and the following day. A wide range of argument took place, in which points were taken which are not considered by the court in its decision.

*Mr. Calderon Carlisle* and *Mr. Joseph H. Choate* for the motion for leave to file.

*Mr. Attorney General* and *Mr. Solicitor General*, opposing, took the following positions:

The government of the United States opposes the filing of a petition for a writ of prohibition to the District Court of Alaska in this case for the following reasons:

I. This court has no power, in any case, to issue a writ of prohibition to that court, because it is not a District Court of the United States within section 688, Revised Statutes.

II. The question of jurisdiction of the Alaska court, which petitioners seek to present, cannot be raised on the record of the admiralty proceedings on file in this court, because (*a*) The face of those proceedings shows jurisdiction in the Alaska court, and after sentence, in such a case, prohibition will not issue. (*b*) Even if the evidence on appeal may be here examined, it shows the taking of seals within three miles of the Alaskan islands, which is confessedly within the jurisdiction of that court, and the seizure did not oust the jurisdiction to condemn the vessel; first, because objection on that account was waived; second, because, however tortious or illegal, the seizure could not annul the proceeding; and third, because the seizure, even if upon the high seas, was legal.

III. Conceding all the facts averred in the petition, the question of the jurisdiction of the Alaskan court depends upon the extent of the dominion of the United States in Behring Sea. This is a political question to be decided by the political department of the government — the Executive and Congress. They have both decided it against the petitioners' contention. This is conclusive upon the judiciary.

Mr. Chief Justice Fuller delivered the opinion of the court.

This is an application for leave to file a petition for a writ of prohibition to the District Court of the United States for the District of Alaska. The Attorney General being present and expressing a desire to that effect, opportunity was afforded him to be heard in opposition to granting the leave to file, and this resulted in argument having a much wider range than was necessary to the disposition of the motion.

We are of opinion, upon the preliminary question, that this court has jurisdiction to proceed in respect to the District Court of the United States for the District of Alaska, by way of prohibition, under section 688 of the Revised Statutes, and leave will therefore be given to file the petition for such writ and the accompanying suggestion. A rule will be entered as in like cases, returnable on such day as will allow reasonable time for service and return, in relation to which we invite the views of counsel.

(Counsel having conferred, the second Monday of April was made the return day.)

*Leave granted.*