### PERCY SUMMER CLUB v. ASTLE et al.

#### (Circuit Court, D. New Hampshire. August 15, 1901.)

#### No. 315.

**1. INTERVENTION—EX PARTE ORDER.**

An order permitting the attorney general, as representing the state, to intervene in the federal courts in an action to restrain trespasses, will not be set aside because granted ex parte, where the officer was entitled to intervene, and, the parties having been fully heard, the court would be obliged to re-enter it if stricken out.

**2. TRESPASS—LAKES—FISHERIES—STATE'S RIGHTS—INTERVENTION BY ATTORNEY GENERAL.**

A bill alleged that complainant is the owner of a lake in New Hampshire covering over 200 acres, and as such owner entitled to an exclusive fishery therein, which defendants had infringed by trespass. Defendants defended on the ground that the lake is one commonly known as a "great pond," which belongs to the state. *Held*, that such suit involves a public question, in which the state is interested, and, though a judgment in favor of plaintiff might not estop the state, the attorney general will be permitted to intervene in its behalf. Potter v. Beal, 50 Fed. 860, 2 C. C. A. 60, distinguished.

**3. SAME.**

The fact that complainant amended the bill, and attempted to eliminate the public character of the question, could not prevent the intervention where the bill retained the description of the lake, since the court would be bound to take judicial notice of the fact that the state of New Hampshire claims all ponds of the extent of the one in question.

In Equity.

Philip Carpenter and F. C. Demond, for complainant.
A. S. Batchellor, W. P. Buckley, and H. F. Hollis, for defendants.

PUTNAM, Circuit Judge. The question now before the court arises from the intervention of the attorney general for the state of New Hampshire. On August 31, 1900, the following petition was offered and filed:

"To the Honorable the Judges of the Circuit Court of the United States for the District of New Hampshire: Respectfully represents Edwin G.

Eastman, attorney general for the state of New Hampshire, that the above-entitled action is one in which the citizens of New Hampshire are vitally interested; wherefore he prays that your honors will direct that his name be entered upon the docket as appearing for the state of New Hampshire.
"Edwin G. Eastman, Attorney General."

Thereupon, without notice to the complainant, the court, on September 8, 1900, entered the following: "Leave to appear granted." October 1, 1900, the complainant moved to vacate this order for several reasons stated in the motion. Its brief in support of its motion has amplified those reasons, and, perhaps, added to them. However, the practice with reference to such interventions is so thoroughly settled in the federal courts that the propositions of the complainant need not be noticed except as appears in this opinion.

It is, first of all, objected that the order was unauthorized, because it was ex parte, and without notice to the complainant. As to that, it may well be said that, as the record stood when the order was entered, the authority of the court to enter it, and the practice in reference thereto, were each so clear and so thoroughly settled that the court might well have understood that no objection to it would be brought forward by the complainant, and that the order might well be entered as a matter of course. However, inasmuch as the parties have now been fully heard, it would be merely superfluous to strike out the original order, inasmuch as we find that we would be obliged to re-enter it if stricken out.

The bill, as originally framed, alleges, in substance, that the complainant is the owner in fee simple of a lake in New Hampshire, about one mile in length, from 30 to 80 rods in width, and covering about 200 acres; that, as such owner, the complainant is entitled to the exclusive right of fishery therein; and that the respondents trespassed on those exclusive rights, with various other allegations usual in bills in equity seeking relief against trespassers, which need not be referred to. The lake, therefore, is one of that class commonly known as "great ponds" within those jurisdictions in New England where the public and private rights with reference to "great ponds" have been determined in colonial or provincial times. This, as the bill was originally drawn, was entirely clear, because it charged that the respondents claimed that the lake in question is public property, belonging to the people of New Hampshire, and also that they maintained that they have right to fish in the lake by virtue of legislation of New Hampshire declaring all ponds in that state containing more than 20 acres to be public waters. Thus the bill on its face showed originally that it related to a subject-matter in which New Hampshire, both as a sovereign state and as representing the body of its people, has an interest, affecting not only this pond, but a common interest with reference to this pond and all other ponds of more than 20 acres in extent.

In this particular the case differs entirely from Potter v. Beal (decided by the circuit court of appeals for this circuit) 2 C. C. A. 60, 50 Fed. 860, in which, on the face of the papers, the controversy was of a purely personal and private character, and in which the attorney of the United States for the district of Massachusetts had

been allowed to intervene without making any showing of any public interest involved. In Potter v. Beal, as the case on its face showed nothing of public interest, the burden was thrown on the United States, if they desired to intervene, to make their intervention sufficiently specific to show a fact which the record did not disclose; as was done in The Exchange, 7 Cranch, 116, 118, 3 L. Ed. 287, and in South Carolina v. Wesley, 155 U. S. 542, 543, 15 Sup. Ct. 230, 39 L. Ed. 254. In the case at bar, however, it clearly was not necessary for the attorney general of New Hampshire to incorporate into his petition matters which the record itself disclosed. Moreover, the opinion in Potter v. Beal, at page 64, 2 C. C. A., and page 864, 50 Fed., reasserts the broad principles permitting the intervention of public authorities where the public interests are concerned.

The complainant confuses its propositions, at one place alleging that New Hampshire has been made a party to the cause, and asking certain orders growing out of that assumption, and at another that there is no occasion for intervention in behalf of the people of the state, because a judgment against the two individual respondents in this cause would bind no one else. As to the first proposition, neither the petition of the attorney general nor the order of the court assumes to make the state a party. The cause is left in that particular on the basis usual where interventions of this nature are allowed, as will be more fully understood from the decisions to which we will refer. So far as the other proposition is concerned, there can be no question that neither the state nor any of its citizens except those who are parties to this bill would be technically estopped by the result of this suit if adverse to the respondents. Nevertheless, the practical effect in that event would be prejudicial, and might substantially conclude further litigation, even though against other individuals. It is especially in consideration of this fact that this class of interventions are allowed, and it is on this account that the supreme court observed, though with relation to other circumstances, in California v. Southern Pac. Co., 157 U. S. 229, 257, 15 Sup. Ct. 591, 602, 39 L. Ed. 683, 693, as follows:

"We have no hesitation in holding that, when an original cause is pending in this court, to be disposed of here in the first instance, and in the exercise of an exceptional jurisdiction, it does not comport with the gravity and finality which should characterize such an adjudication to proceed in the absence of parties whose rights would be, in effect, determined, even though they might not be technically bound in subsequent litigation in some other tribunal."

It would be especially unbecoming for the federal courts to pass on a great question in which a sovereign state of the Union has a direct interest, if not as lord paramount, at least as representing all its citizens, without affording it an opportunity to be heard before the legal proceedings in which the question is involved are concluded. It is in accordance with these principles of justice that interventions of the class in question have been, as already stated, most freely allowed in federal courts. The earliest, as well as the most interesting, precedent is The Exchange, 7 Cranch, 116, 3 L. Ed. 287,

already referred to. There certain gentlemen, residents of Mary-
land, filed a petitory libel against the schooner named, claiming her
to be their own property. She was in fact in the possession of the
naval officers of Napoleon, the emperor of France, and she carried
his flag, which was sufficient to authenticate her as a public French
vessel of war, no especial documents being necessary therefor; in-
deed, so far as international relations are concerned, nothing being
needed to authenticate a public vessel of war except the flag and the
uniform of the officer commanding the vessel. On the libel being
filed, and monition issuing, the French government refused to re-
spond thereto, or to show cause why the vessel should not be re-
stored to the libelants. Thereupon the attorney of the United
States for the district of Pennsylvania, acting at the instance of the
federal executive, filed what is called in the report (at page 118,
7 Cranch, and page 288, 3 L. Ed.) a "suggestion," setting out the
facts, and bringing into court the original commission of the com-
mander of the ship, and praying that she be released. On this sug-
gestion an issue was made by the libelants. The case went through
the district and circuit courts to the supreme court, and there the
suggestion of the attorney general was sustained, the libel was dis-
missed, and the vessel was returned to the custody of her com-
mander. No parties appeared to formally claim the vessel, as re-
quired by the admiralty rules, and no counsel were heard on that
side of the cause except the attorney of the United States for the
district of Pennsylvania and the attorney general of the United
States, each acting in his official and public capacity. Chief Justice
Marshall, after summing up the facts, and showing that, inasmuch
as she was a public, armed ship in the service of a foreign country
with whom the United States were at peace, she should be exempt
from the jurisdiction of our courts, added, at page 147, 7 Cranch,
and page 297, 3 L. Ed., as follows: "If this opinion be correct,
there seems to be a necessity for admitting that the facts might be
disclosed to the court by the suggestion of the attorney for the
United States." In this case neither the United States nor its citi-
zens had any direct interest whatever, and the intervention was
merely in the performance of international obligations. The United
States did not become parties to the record. These particulars
demonstrate that the rule which we are considering is of the broad-
est character, and is applied without formalities.

Another instance of permitted intervention by a sovereignty in
what was, in form, merely the litigation of private parties, is found
in Re Cooper, 138 U. S. 404, 11 Sup. Ct. 289, 34 L. Ed. 993; Id.,
143 U. S. 472, 12 Sup. Ct. 453, 36 L. Ed. 232. There a petition to
the supreme court for a writ of prohibition to the judge of the district
court for the territory of Alaska, with a suggestion in support of the
petition from the attorney general of Canada, with the approval of
the imperial government of Great Britain, were filed and heard. The
court expressly authorized the filing of the suggestion in 138 U. S., at
page 414, 11 Sup. Ct. 290, 34 L. Ed. 997, and the same is briefly ex-
plained again in 143 U. S., at page 474, 12 Sup. Ct. 453, 36 L. Ed. 233.
There the interest of Great Britain was of the character of the alleged

interest of New Hampshire in the controversy before us, and related exclusively to the public right of fishing by her majesty's subjects; the case being, if anything, one step further removed from any direct right, because, in Re Cooper, the high seas, the public waters of all nations, were involved, while at bar New Hampshire claims to be lord paramount and to hold title.

Indeed, the rule is often applied where only private interests are at stake. It is the constant practice before the high courts of record—especially before the supreme court—to permit private parties who may be practically affected by the conclusions in particular causes, although not technically estopped thereby, to be heard in their own behalf on the most informal suggestions. Instances of this character, where the same question is involved in a suit later on the docket than that under argument, are numerous, and a notable example is found in the late Porto Rico Cases, 182 U. S. 1–397, 21 Sup. Ct. 742–829, 45 L. Ed. 1065, where the court went so far as to permit the intervention of certain local interests, which claimed that they would be prejudiced by the unrestricted importation of Porto Rican products.

It is not necessary that we should now determine the precise status with reference to the cause which will be occupied by the attorney general for New Hampshire, nor how far he can interfere with the conduct thereof. As the questions are practically developed as the cause proceeds, they can probably be easily determined with the assistance of Florida v. Georgia, 17 How. 478, 15 L. Ed. 181; Stanley v. Schwalby, 147 U. S. 508, 13 Sup. Ct. 418, 37 L. Ed. 259; South Carolina v. Wesley, 155 U. S. 542, 15 Sup. Ct. 230, 39 L. Ed. 254 (already referred to); Belknap v. Schild, 161 U. S. 10, 16 Sup. Ct. 443, 40 L. Ed. 599; and Stanley v. Schwalby, 162 U. S. 255, 16 Sup. Ct. 754, 40 L. Ed. 960. It is enough for the present to say that, as the record stood at the time the order in question was entered, there was no doubt of either the power or the duty of the court to make it.

Subsequently to its entry, the complainant made substantial amendments to its bill, and it maintains that, as it now stands, the bill involves no public interest whatever. In its original form it was a bill of peace, or substantially so, and therefore, both with reference to the question of jurisdictional amount and with reference to the nature of the proceeding, it was, perhaps, sustainable as a suit in equity in the circuit court of the United States, unless barred by the proposition, sometimes maintained, that a bill of peace will not lie in contradiction to what is claimed to be strictly a public right. If the amendments made by the complainant had so broad an operation as to exclude the possibility of a question of a public nature being involved in the result, it is quite probable that the bill would thus be stripped to bare poles, and brought down to an attempt to restrain ordinary trespassers, and to a controversy involving only a nominal amount, and therefore, in either respect, not within our jurisdiction as chancellor. Before, however, we can accede to the proposition that no question of a public character remains, the bill would require further amendments,—among other

things, by striking out the description of the lake as one which, if the statute of New Hampshire referred to in the bill as originally drawn was effective, would be a "great pond"; and by striking out also the claim of an exclusive right of fishery, which the bill still asserts; and also by inserting additional allegations so as to point out the basis of the respondents' claim of right with some particularity, instead of stating this, as the bill now does, in general terms only. While it is true that the charge originally in the bill with reference to the legislation of New Hampshire has been stricken from it, yet we are bound to take judicial notice of its statutes, and, consequently, to take judicial notice that New Hampshire claims that all ponds in the state of the extent of the one in question are public waters; so that there is enough left in any aspect to lead to the conclusion that a public question is involved, in which New Hampshire is concerned, and with reference to which, according to the undoubted practice of the federal courts, as we have already shown, the attorney general of the state should be heard.

In conclusion, it should be said that, while the action of the court in passing the order in controversy cannot be questioned, judicial tribunals can hold the scales equally between the complainant and any sovereignty, no matter how powerful, as well as between the complainant and the humblest citizens of New Hampshire; and no just interests of the complainant are involved in the question we have considered. We have, perhaps, carried this discussion to an unnecessary length, the rules appertaining thereto being so well known, and so commonly practiced, in the federal courts; but the careful and thorough presentation by the complainant of the question involved has invited us to do so.

The order entered on September 8, 1900, granting the petition of the attorney general of New Hampshire that his name may be entered as appearing for the state of New Hampshire, is affirmed.