Pete FREDERICKS, Appellee,

v.

Robert A. MANDEL, Austin Gillette, Tillie Walker, Roy Bird Bear, Williard Yellow Bird, August Little Soldier, Ralph Bird Bear, Eva Beaks, Sam Little Owl, Tom Eagle, Marie Wells, and Frank Felix, individually and as officials of the Three Affiliated Tribes of the Fort Berthold Reservation, Appellants.

No. 80–1722.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1981.

Decided June 3, 1981.

effective remedy for Oglala's constitutional claim. *See generally Carlson v. Green, supra,* 446 U.S. at 18–19, 100 S.Ct. at 1471–72.

John O. Holm, Dickinson, N. D., for appellants.

Daniel H. Israel (argued), Dechert, Price & Rhoads, Denver, Colo., for appellee.

Before LAY, Chief Judge, ROSS, Circuit Judge, and ROBINSON, Senior District Judge.*

LAY, Chief Judge.

Pete Fredericks is a rancher and the beneficial owner of approximately 4,600 acres of restricted trust allotments in the Fort Berthold Indian Reservation. He possesses a trust patent to the land by reason of his purchase of the interest of the original Indian allottees. Celina Mossett and her family own property the only access to which is through Fredericks' ranch. The Mossett family has never acquired a right-of-way across the ranch. A dispute exists between the two families as to whether Fredericks must provide the access road. On August 15, 1979, the tribal court of the Three Affiliated Tribes of the Fort Berthold Indian Reservation condemned some of Fredericks' land as a public right-of-way. Fredericks filed suit for declaratory and injunctive relief in the United States District Court for

* Richard E. Robinson, Senior District Judge, District of Nebraska, sitting by designation.

the District of North Dakota to enjoin the enforcement of the tribal court's order. The district court ruled that the tribal court was without jurisdiction to condemn or grant a right-of-way over lands held in trust by the United States for individual Indians, relying upon the provisions of the General Allotment Act, 25 U.S.C. §§ 331–338, and *Minnesota v. United States*, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939). We affirm.

In *Minnesota v. United States*, the Supreme Court held that condemnation of Indian trust lands had to proceed in a federal district court because the United States, as owner of the fee of the allotted lands, was an indispensable party.[1] The Court observed:

A proceeding against property in which the United States has an interest is a suit against the United States. *The Siren*, 7 Wall. 152, 154 [19 L.Ed. 129]; *Carr v. United States*, 98 U.S. 433, 437 [25 L.Ed. 209]; *Stanley v. Schwalby*, 162 U.S. 255 [16 S.Ct. 754, 40 L.Ed. 960]. Compare *Utah Power & Light Co. v. United States*, 243 U.S. 389 [37 S.Ct. 387, 61 L.Ed. 791]. It is confessedly the owner of the fee of the Indian allotted lands and holds the same in trust for the allottees. As the United States owns the fee of these parcels, the right of way cannot be condemned without making it a party. . . .

Minnesota contends that the United States is not an indispensable party. It argues that since the second paragraph of § 3 of the Act of March 3, 1901, provides that "the money awarded as damages shall be paid to the allottee," the United States has no interest in the land or its proceeds after the condemnation has begun. Under § 5 of the General Allotment Act, Act of February 8, 1887, c. 119, 24

Stat. 388, 389, U.S.C. Title 25, § 348, the Indians' interest in these allotted lands was subject to restraints on alienation; and by § 2 of the Indian Reorganization Act, Act of June 18, 1934, c. 576, 48 Stat. 984, U.S.C. Title 25, § 462, restraints on alienation were extended. The clause quoted may not be interpreted as freeing the allottee's land from the restraint imposed by other acts of Congress. As the parcels here in question were restricted lands, the interest of the United States continues throughout the condemnation proceedings. In its capacity as trustee for the Indians it is necessarily interested in the outcome of the suit—in the amount to be paid. That it is interested, also, in what shall be done with the proceeds is illustrated by the Act of June 30, 1932, c. 333, 47 Stat. 474, U.S.C. Title 25, § 409a, under which the Secretary of the Interior may determine that the proceeds of the condemnation of restricted Indian lands shall be reinvested in other lands subject to the same restrictions.

*Id.* at 386–88, 59 S.Ct. at 294–95 (footnotes omitted).

The reasoning of *Minnesota v. United States*, is applicable here. *See also United States v. Clarke*, 445 U.S. 253, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980).

The Tribes' officers argue that there are no congressional restrictions on intra-tribal transfers of trust land, such as there were on transfers to the State of Minnesota, and, therefore, the United States has no interest which makes it an indispensable party to tribal condemnations.[2] Section 5 of the General Allotment Act of 1887 (GAA), 25 U.S.C. § 348, does not distinguish between conveyances to Indians and non-Indians; by its plain terms the act of conveying is "absolutely null and void,"[3] irrespective of who

---

1. The State of Minnesota was proceeding under section 3 of the Act of March 3, 1901, 25 U.S.C. § 357, which provides:

Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee.

2. Section 3 of the Act of March 3, 1901, 25 U.S.C. § 357, however, does not distinguish between Indian and non-Indian condemnors.

3. 25 U.S.C. § 348 provides in pertinent part:

And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above men-

is the conveyee. Neither the words of the statute nor a review of its legislative history [4] provides a basis for concluding that the GAA does not restrict involuntary transfers of trust lands among Indians. Admittedly a primary congressional purpose in the GAA was to prohibit alienation of Indians' property to whites, *Conroy v. Conroy*, 575 F.2d 175, 180–81 (8th Cir. 1978), but the means adopted was to create property rights with restricted alienability in individual Indians. The GAA, it was hoped, would "uplift" the Indians by replacing tribal property concepts with the private property concepts of the dominant society. F. Cohen, Handbook of Federal Indian Law 207–10 (1942). We cannot infer from this act that Congress intended that the tribe remain free to condemn in tribal court, without the participation of the United States, the private rights in trust lands created by Congress.

The Tribes urge that the Indian Reorganization Act (IRA), 25 U.S.C. §§ 461–479, eliminated the restrictions on alienation found in the GAA when dealing with tribal condemnation.[5] In 1934 Congress extended the existing periods of trust on Indian lands and the restrictions on alienation. 25 U.S.C. § 462. One exception in the IRA to the GAA's restrictions on alienation was "[t]hat such lands or interests may, with the approval of the Secretary of the Interior, be sold, devised, *or otherwise transferred* to the Indian tribe in which the lands or shares are located." 25 U.S.C. § 464. The argument is made that the tribes were given recognition of their independent sovereignty by the IRA and this recognition included implicitly congressional approval of the power of eminent domain.[6] The Tribes also argue that the United States is not indispensable when a tribe seeks to condemn Indian trust land, since the IRA has provided that the land *may be transferred* with the consent of the Secretary of the Interior.[7] Lastly, the Tribes argue that the Secretary's approval, under section 477, of the eminent domain provisions in the tribal charter and constitution gives the Tribes authority to condemn Fredericks' land.

tioned, such conveyance or contract shall be absolutely null and void....

4. In the most recent interpretation of 25 U.S.C. § 357, the Supreme Court showed a preference for "the admittedly old-fashioned but nonetheless still entirely appropriate 'plain meaning' canon of statutory construction." *United States v. Clarke*, 445 U.S. 253, 254, 100 S.Ct. 1127, 1128, 63 L.Ed.2d 373 (1980) (Rehnquist, J., for the court). But we are aware that "[i]t is a 'familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.'" *United Steelworkers v. Weber*, 443 U.S. 193, 201, 99 S.Ct. 2721, 2727, 61 L.Ed.2d 480 (1979) (Brennan, J., for the court).

5. The limitations upon and special protections accorded to allotted trust lands were made applicable to purchased trust lands in 1923 and govern here. 25 U.S.C. § 335.

6. The question as to whether tribal governments have the power to condemn the trust lands of their members has been specifically rejected in a memorandum opinion by the Solicitor of the Department of the Interior. Solicitor, Dept. of Int., Tribal Condemnation of Purchased Trust Lands on the Fort Berthold Reservation (Oct. 18, 1979). The Solicitor passed on the question whether the tribal court of the Three Affiliated Tribes of Fort Berthold Reservation could condemn individually owned trust property located within the boundaries of the reservation. The Solicitor reasoned:

Because of the Allotment Act prohibitions against involuntary alienation, powers vested by existing law in Indian tribes at the time of passage of the Indian Reorganization Act did not include the power to condemn allotted trust lands. Nor was that power granted to tribal governments under the above provision. The express deletion from the 1934 Act of a grant of condemnation power over restricted individually held Indian lands and the absence of anything resembling a grant of condemnation power in the enacted provision concerning tribal powers of self-government, are incompatible with construing an implied grant of such powers in the general language of section 4 of this Act.

Slip op. at 7.
Although we find the opinion of the Solicitor persuasive, it is not necessary for us to determine the effect of the IRA provisions on the GAA.

7. In the present case there is no evidence that either Fredericks has given his consent to the transfer of his land under 25 U.S.C. § 483 or that the Secretary of the Interior has given his consent to the Tribes to obtain the right-of-way under 25 U.S.C. §§ 323 and 464.

These arguments fail to appreciate the need to join all interested parties in any condemnation suit. Since the United States was not joined as a party (it is undisputed it is the owner of the fee title) and the suit was not brought in federal court, the tribal court was without jurisdiction to condemn the land and the district court was correct in enjoining the action of the tribal court. If the power of the Tribe to condemn exists, suit must proceed in federal court and the United States must be joined as a party. As a prerequisite to such suit, if it can be shown that the Secretary of the Interior has consented to the acquisition of the land, then the federal court would have to decide the question we reserve here: whether the tribal government possesses the power of eminent domain and may sue the United States in federal court.

Section 1 of the Act of February 5, 1948, 25 U.S.C. § 323, authorizes the Secretary of the Interior to grant rights-of-way over Indian trust lands. The accompanying statutory provisions, 25 U.S.C. §§ 324–328, and regulations, 25 C.F.R. §§ 161.1 et seq., make clear that the Secretary's approval is an indispensable requirement for obtaining a right-of-way over trust lands. Since such approval has not been obtained, the tribal court has no jurisdiction to grant a right-of-way or easement over Fredericks' land in an action initiated in the tribal court by Celina Mossett. We affirm the district court's injunction in this regard.

The district court had jurisdiction in this case under 25 U.S.C. § 345, which jurisdiction included the authority to enjoin unenforceable orders of the tribal court.

Judgment affirmed.