BUSKIRK et al. v. KING.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1896.)

No. 144.

1. APPEAL—INJUNCTION—RESTRAINING WASTE PENDING EJECTMENT.
    Pending an ejectment, suit was brought to enjoin the defendant from cutting timber. The answer to the bill averred that defendant expected, on the trial in ejectment, to rely on a forfeiture of plaintiff's title for nonpayment of taxes, and to show outstanding title in the state; but it made no allegations properly presenting the question of forfeiture to the equity court, there being no statement for what years the land was not entered for taxation, or for what years, or in what counties, it was delinquent and forfeited. *Held* that, as the question of forfeiture was not properly presented, and was evidently not considered by the court below before granting the injunction, it would not be considered on an appeal.

2. ISSUANCE OF INJUNCTION.
    Where an injunction is sought merely to preserve the status quo pending an action of ejectment by restraining defendant from cutting timber, complainant is not required to make out such a case as will entitle him to a decree on final hearing, and it may happen that an injunction is properly granted, although the ultimate relief sought is finally denied.

3. SAME.
    If the mischief complained of is irremediable, and destroys the substance of the property, as in the case of cutting of timber and extracting ores, an injunction will issue in order that the property may be preserved from destruction during such time as may be necessary to try the title at law.

Appeal from the Circuit Court of the United States for the District of West Virginia.

John A. Hutchinson and W. P. Hubbard (Z. T. Vinson, on the brief), for appellants.

Maynard F. Stiles and E. L. Buttrick, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

GOFF, Circuit Judge. This is an appeal from an interlocutory decree by which an injunction was granted. The appellee, Henry C. King, claiming to be the owner of a tract of 500,000 acres of land, a part of which was said to be located in the state of West Virginia, instituted his action of ejectment in the circuit court of the United States for the district of West Virginia against U. B. Buskirk and M. B. Mullins, who, it was charged, were in possession of a certain portion of said land. The action of ejectment was pending and undetermined when King tendered to the court his bill of complaint against Buskirk and Mullins, in which he claimed that he was entitled to the protection of the court on its equity side during the pendency of said action at law, and in which he charged that said parties were in possession of the land, and were preparing to cut and remove large quantities of valuable timber from the same; the prayer of the bill being that they be restrained by injunction from committing waste, or doing any act which would make the land less valuable, until the trial of the action of ejectment. The bill sets out the title of King to the tract of land mentioned, alleging that by patent dated June 23, 1795, the commonwealth of Virginia granted the same to one Robert Morris, and that by subsequent conveyances—all of which are set forth with particularity, but it is not deemed necessary to describe them here—the title to said land was regularly and duly vested in him. It is set forth in the bill that the part of such land claimed and held by the defendants is heavily timbered; that because thereof it was purchased by the plaintiff, who had expended large sums of money in acquiring it, and in preparations for utilizing and marketing the timber, which, it is alleged, constitutes its chief value, and which defendants were then cutting and removing against the remonstrance of King, of whose title to the said land they were fully advised. The motion for an injunction was passed upon by the court below on the 3d day of July, 1895, the court considering the bill and exhibits, the answer and exhibits, the affidavits filed by the plaintiff, and the affidavits and depositions taken and filed by the defendants. The answer denied plaintiff's title, set up that the land claimed by and in possession of the defendants was not located within the boundaries of the grant to Morris, and alleged in general terms the forfeiture of the plaintiff's title, and an outstanding title in the state of West Virginia on account of such forfeiture. It also claimed title to said land in Mullins by conveyance from one L. D. Chambers and otherwise, not required to be now set forth, admitted the cutting and removing of the timber, and insisted on defendants' right to do so; the defendant Buskirk alleging that he was the owner of the timber by purchase from Mullins. The court below granted the in-

junction as prayed for by the plaintiff, and from such decree the defendants appealed.

In disposing of the questions raised by the assignments of error, we do not think it proper to decide in this suit, at least on this appeal, those presented by counsel for appellants relating to the identity and forfeiture of the land in controversy. The record, as made below, does not fully present them; nor were they, if we may judge from the pleadings and testimony, relied upon by counsel when the motion for the injunction was under consideration, and the court below evidently intended that they should be examined into and decided during the trial of the ejectment. The exhibits filed with the bill and answer show, as to the matter of identity, a contention about which there is an evident conflict in the testimony, which makes it peculiarly fit that all questions connected therewith should be submitted to the decision of a jury. While we think that the court to which an application for an injunction is made in cases similar to this, in which the plaintiff's title is drawn in question, should consider the matter of forfeiture when the same is properly pleaded, and refuse the restraining order when it appears that the title under which the plaintiff claims has been in fact forfeited, and while we do not intend to say that this court will not, on a record fairly presenting it, determine that question, still we are compelled to rule that the case as made below did not authorize that court to pass upon, and will not justify us in now deciding, the questions relating to the forfeiture of the plaintiff's title. The defendants, in their answer, say that they expect to rely on, plead, and prove the forfeiture of the plaintiff's title, and show the outstanding title in the state of West Virginia, upon the trial of the action of ejectment. While the matter was thus referred to, it is evident that it was not intended to be fully presented at that time, and that it was not considered nor disposed of by the court below. The fact is that there is no such allegation in the answer, bearing upon said question, properly presenting it as a matter of defense for the consideration of the court, it not being stated for what years the land was not entered for taxation, nor for what years, or in what counties, it was delinquent and forfeited. This was likely owing to the fact that all of said matters were to be fully presented and decided at the trial of the action at law, which was expected to take place, as is shown by the order of the court then made, within a few days after the answer was filed. Before leaving this question, we deem it proper to say that if the plaintiff's title was forfeited at the time he filed his bill and made the motion for an injunction, he then had not even a prima facie case, and would not have been entitled to the relief for which he prayed; and we have no doubt but that the court below, under such circumstances,—the forfeiture having been properly pleaded and proved,—would have refused it.

We now come to consider the assignment of error that, in substance, the court below erred in granting the injunction, independent of the questions we have just referred to. In doing this we must keep in mind that courts of equity are not to be regarded as in any

manner forestalling the final action of courts of law on the questions involved when they grant the temporary relief afforded by interlocutory injunctions. In doing so they simply adjudge that the plaintiff presents such a case as justifies the court in preserving the status quo until a court of law has had an opportunity, with all the facts before it, and with the assistance of a jury, of determining the real merits of the controversy. In such matters the plaintiff is not required to make out such a case as will entitle him to a decree in his favor on final hearing, and it sometimes happens that he ultimately fails to secure the relief asked for, while, nevertheless, the granting of the preliminary injunction was eminently proper. The legal rights of the parties are not decided by the courts of equity, but the property in issue is guarded until those rights have been ascertained by the tribunal established for that purpose. And this is particularly so in cases where the value of the property in dispute consists of timber standing on the land, or in minerals under it. In such instances, where both or several different parties claim title to the property in controversy, it is not uncommon to restrain them all from the cutting of timber or the removal of minerals, for the reason that, if it is permitted, it will result in injury to the rights and interests of the true owner. Like bills of quia timet, injunctions in such cases are in the nature of writs of prevention, intended to accomplish the ends of precautionary justice. While it is true that under the ancient rules of courts of equity parties were left to their legal remedies in cases of trespass, it is equally true that at this time the practice prevails of allowing injunctions in such cases where the injury is irreparable. The true foundation of this jurisdiction is the probability of permanent injury to the property in dispute, the inadequacy of pecuniary compensation, and the prevention of a multiplicity of suits. If the mischief complained of is irremediable, and destroys the substance of the property, such as the cutting of timber, the mining of minerals, and the extracting of ores, an injunction restraining such acts will issue, in order that the property may be preserved from destruction during such time as may be necessary to try the title at law. This practice is now well established in the courts of the United States, as also in those of a number of the states. As showing the rule and the necessity for it, as also the reasons for applying it to cases like the one now before us, the following authorities are cited, viz.: U. S. v. Gear, 3 How. 120; Erhardt v. Boaro, 113 U. S. 537, 5 Sup. Ct. 565; Burnley v. Cook, 13 Tex. 586; Jerome v. Ross, 7 Johns. Ch. 315; Bonaparte v. Railroad Co., 1 Baldw. 231, Fed. Cas. No. 1,617; Hanson v. Gardiner, 7 Ves. (Sumn. Ed.) 305; Attorney General v. Norwood, 1 Bland, 581; Ingraham v. Dunnell, 5 Metc. (Mass.) 126; Story, Eq. Jur. §§ 863, 925, 926, 929, 948, 956; Bracken v. Preston, 1 Pin. 584; Bird v. Railroad Co., 8 Rich. Eq. 46; Kane v. Vandenburgh, 1 Johns. Ch. 11; Wood v. Braxton, 54 Fed. 1005; Mining Co. v. Fremont, 7 Cal. 317; Kinsler v. Clarke, 2 Hill, Eq. 618; Livingston v. Livingston, 6 Johns. Ch. 499; High, Inj. § 671.

It follows that the decree appealed from must be affirmed, and it is so ordered.