CONLEY et al. v. DAUGHTERS OF THE REPUBLIC OF TEXAS.

(Court of Civil Appeals of Texas. San Antonio. Nov. 13, 1912. On Motion for Rehearing, Dec. 11, 1912.)

1. STATES (§ 88*) — PROPERTY — STATUTES — "CARE AND CUSTODY."

Acts Jan. 26, 1905 (Acts 29th Leg. c. 7), which provided that upon the state's receipt of title to the so-called "Alamo property" the Governor should deliver it, together with the Alamo church property already owned by the state, to the custody and care of the Daughters of the Republic of Texas, a private corporation, to be maintained by them in good order and repair without charge to the state, and to be remodeled only upon plans adopted by the corporation and approved by the Governor, and that all the property should be subject to future legislation, by the use of the words "care and custody" placed the corporation in the exclusive and absolute control within the conditions prescribed by the act; the "care and custody" of persons or property carrying the idea of exclusive possession.

[Ed. Note.—For other cases, see States, Dec. Dig. § 88.*]

2. STATUTES (§ 159*)—REPEAL—IMPLICATION.

Repeals by implication are not favored by the courts, and a statute will not be held to repeal an existing one unless there is irreconcilable repugnancy between them, or unless there is an evident design on the part of the Legislature to supersede all prior legislation in connection with the subject-matter and to enact a complete law in regard to it.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 229; Dec. Dig. § 159.*]

3. STATES (§ 88*)—DISPOSITION OF PROPERTY —STATUTES—REPEAL.

Act Jan. 26, 1905 (Acts 29th Leg. c. 7), which gave to the Daughters of the Republic of Texas, a private corporation, the exclusive care and custody of the Alamo property owned by the state, charged with its repair and maintenance, was not repealed by an item in the appropriation act of 1911 (Acts 32d Leg. c. 3), which provided "for the improvement of the Alamo property belonging to the state of Texas, * * * to be expended under the direction of the superintendent of public buildings and grounds upon the approval of the Governor, $5,000," the latter provision being in harmony with the existing law and merely supplementary thereto, so that before the appropriation could be used the plans therefor ought to be made by the corporation and approved by the Governor.

[Ed. Note.—For other cases, see States, Dec. Dig. § 88.*]

4. INJUNCTION (§ 35*)—TRESPASS TO PROPERTY—RIGHT OF ACTION—TITLE OF PLAINTIFF.

A private corporation given the exclusive care, custody, and possession of the so-called "Alamo property," owned by the state, by legislative consent, charged with its repair and maintenance, had the right and duty to protect its possession from a trespasser by action to enjoin the trespass.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 77; Dec. Dig. § 35.*]

5. CONSTITUTIONAL LAW (§ 26*)—LEGISLATIVE DEPARTMENT—SCOPE OF POWERS.

Within constitutional limits the power of the Legislature in the enactment of laws is supreme.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 30; Dec. Dig. § 26.*]

6. STATES (§ 88*)—CUSTODY OF PROPERTY—CONSTITUTIONALITY OF STATUTE.

The superintendency of public buildings is a legislative office which may have its powers increased or restricted or be abolished by the Legislature, and Act Jan. 26, 1905 (Acts 29th Leg. c. 7), which gave the Daughters of the Republic of Texas, a private corporation, the exclusive care and custody of the so-called "Alamo property," charged with its care and maintenance for historical and patriotic purposes, was constitutional.

[Ed. Note.—For other cases, see States, Dec. Dig. § 88.*]

7. STATES (§ 191*)—ACTIONS—RIGHT OF "SUIT AGAINST STATE."

State officers, who without legislative authority or sanction trespass upon state property given by express enactment into the exclusive possession of a private corporation, do not represent the state, and may be sued as any other trespassers upon the rights of possession would be sued; a suit against them not being a suit against the state.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 179–184; Dec. Dig. § 191.*

For other definitions, see Words and Phrases, vol. 7, p. 6778; vol. 8, p. 7809.]

8. CORPORATIONS (§ 499*)—CORPORATE POWERS—CAPACITY TO SUE AND BE SUED.

A private corporation, in the absence of charter or statutory provisions to the contrary,

---

has the same capacity to sue and be sued as a natural person; the power to sue and be sued are among its incidental and implied powers which need not be expressly conferred.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1910, 1911, 1913–1919, 2030; Dec. Dig. § 499.*]

9. INJUNCTION (§ 35*)—PREVENTION OF TRESPASS—SUIT BY CORPORATION—CONDITIONS PRECEDENT.

A private corporation, vested by the Legislature with the exclusive possession and control of property belonging to the state, to sustain a suit to enjoin a trespass need not show express statutory authority, since the statute carried with it the grant of every power needed to carry its purpose into effect.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 77; Dec. Dig. § 35.*]

10. CORPORATIONS (§ 519*)—CIVIL ACTION—PRESUMPTION—SUIT AUTHORIZED BY CORPORATION.

A suit by a corporation sanctioned by its president and other officers will be presumed to have been authorized by the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2085, 2088–2093; Dec. Dig. § 519.*]

11. STATES (§ 88*)—CONTROL OF PUBLIC PROPERTY—EXECUTION OF CORPORATE PURPOSES.

It was not a condition precedent to suit to enjoin a trespass to real property owned by the state and given by it into the exclusive possession and control of plaintiff, a private corporation, that plaintiff should allege or prove that it was executing the charge reposed in it; that being a matter only between it and the state, to be inquired into by the Legislature.

[Ed. Note.—For other cases, see States, Dec. Dig. § 88.*]

12. PERPETUITIES (§ 4*) — CONSTITUTIONAL AND STATUTORY PROVISIONS—CUSTODY OF STATE PROPERTY.

Act Jan. 26, 1905 (Acts 29th Leg. c. 7), which gave to a private corporation the exclusive possession and control of the so-called "Alamo property," belonging to the state, charged with its repair and maintenance for historical and patriotic purposes, and provided that "all of said property being subject to future legislation of the state of Texas," did not violate Const. art. 1, § 26, which declares that perpetuities are contrary to the genius of free government and shall never be allowed.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. § 4.*]

13. MONOPOLIES (§ 3*)—CONSTITUTIONAL AND STATUTORY PROVISIONS—CUSTODY OF PUBLIC PROPERTY.

A "monopoly," in the sense forbidden by Const. art. 1, § 26, consists in the ownership or control of so large a part of the market supply of a given commodity as to stifle competition, restrict the freedom of commerce, and give the monopolies control over prices; and hence Act Jan. 26, 1905 (Acts 29th Leg. c. 7), which granted to a private corporation property owned by the state charged with its repair and maintenance for historical and patriotic purposes, subject to future legislation, did not violate the constitutional provision, since it was but the assumption of a burden which deprived no citizen of any privilege or right and brought no financial gain to the corporation.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 5, pp. 4570–4574.]

14. CORPORATIONS (§ 28*) — INCORPORATION AND ORGANIZATION—"DE FACTO CORPORATION."

Although a private corporation may not have complied with all the statutory requirements, it is a "de facto corporation."

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 26, 70; Dec. Dig. § 28.*

For other definitions, see Words and Phrases, vol. 2, pp. 1841–1843.]

15. CORPORATIONS (§ 29*) — INCORPORATION AND ORGANIZATION—VALIDITY—COLLATERAL ATTACK.

The corporate existence of a private corporation cannot be attacked in a collateral proceeding.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 77–79, 2504; Dec. Dig. § 29.*]

16. CORPORATIONS (§ 513*)—ACTIONS—NECESSITY FOR ALLEGING AUTHORITY TO BRING SUIT.

It is not necessary in a suit by a private corporation to allege that the suit is authorized by the board of directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2017–2027, 2031–2034, 2036–2045; Dec. Dig. § 513.*]

17. INJUNCTION (§ 46*)—TRESPASS TO REAL PROPERTY—GROUNDS.

A private corporation vested by legislative enactment with the exclusive possession and control of property belonging to the state, charged with its care and maintenance, on showing that its possession had been invaded and injured by state officers, was entitled to an injunction restraining the trespass.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 98, 99, 107; Dec. Dig. § 46.*]

### On Motion for Rehearing.

18. STATUTES (§ 150, New, vol. 2 Key-No. Series) — REPEAL — CONSTITUTIONAL PROVISIONS.

Const. art. 3, § 35, which provides that "no bill (except general appropriation bills, which may embrace the various subjects and accounts for and on which moneys are appropriated) shall contain more than one subject which shall be expressed in its title," does not authorize the passage of new laws or the repeal of old ones by a general appropriation bill.

19. STATUTES (§ 154*)—REPEAL—CONSTITUTIONAL PROVISIONS—RE-ENACTMENT.

An item in a general appropriation act which makes no reference by title or otherwise to a previous legislative act could not amend such act, since Const. art. 3, § 36, provides that no law shall be amended by reference to its title, but that in such case the act reviewed or the section or sections amended shall be re-enacted and published at length.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 221; Dec. Dig. § 154.*]

20. STATES (§ 88*)—CIVIL ACTIONS—DENIAL OF CORPORATION'S GOOD FAITH.

In an action by a private corporation vested by the Legislature with the exclusive possession and control of public property belonging to the state, charged with its care and maintenance for historical and patriotic purposes, to enjoin a trespass, the objection that the corporation has not acted in good faith with the state cannot be considered; that being a matter not to be addressed to the Legislature.

[Ed. Note.—For other cases, see States, Dec. Dig. § 88.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Injunction by the Daughters of the Repub-

lic of Texas against A. B. Conley and others. From an order perpetuating a temporary injunction, defendants appeal. Affirmed.

J. F. Carl, of San Antonio, for appellants. Webb & Goeth and Denman, Franklin & McGown, all of San Antonio, for appellee.

FLY, C. J. Appellee, a private corporation duly incorporated under the laws of Texas, instituted this suit to enjoin Dr. A. B. Conley, individually and as superintendent of public buildings and grounds, J. B. Nitschke, individually and as state inspector of masonry, and J. M. English, individually and as foreman of the workmen engaged in trespassing upon certain property, from so trespassing. It was alleged that, by an act of the Legislature of Texas dated January 26, 1905 (Acts 29th Leg. c. 7), the Governor was authorized to purchase the property known as the Hugo-Schmeltzer property, formerly a part of the Alamo Mission and adjoining the Alamo Church, which was the property of the state; that the Governor bought the property; and by the act of the Legislature of 1905 he was required to deliver the property, known as the Hugo-Schmeltzer property, as well as the Alamo Church property, to the custody and care of the Daughters of the Republic of Texas, and under the provisions of the act the custody, care, and possession of the property were duly delivered by the state of Texas to appellee; that appellants wrongfully and unlawfully, and without the consent of appellee, had entered upon the property and were engaged in tearing down the improvements and were threatening to remodel the same and erect improvements thereon without the consent of appellee and without the authority of law. A temporary writ of injunction was granted against appellants, which, on a final hearing, was perpetuated.

The court filed the following findings of fact, which are adopted by this court, with the emendation of a few unnecessary words:

"(1) The Daughters of the Republic of Texas is a private corporation, duly incorporated under the laws of the state of Texas, for the purpose set forth and alleged in plaintiff's petition herein.

"(2) Under the act of the Legislature of the state of Texas, approved January 26, 1905, as averred in plaintiff's petition herein, the state of Texas through its Governor purchased the property known as the Old Hugo & Schmeltzer Building in plaintiff's petition fully described, and being a part of what is commonly known as the 'Alamo property,' and previous to such purchase, the state of Texas had acquired what is known as the 'Alamo Mission' property proper in said city of San Antonio; the two properties together constituting what is commonly known as the Alamo property in the city of San Antonio.

"(3) In accordance with the provisions of said act of the Legislature, said two properties were delivered by the state of Texas into the custody and care of plaintiff prior to any of the trespasses alleged in plaintiff's petition, and at the time of the said alleged trespasses said plaintiff was in possession of said property, holding the care and custody of same under the terms of the act of the Legislature above referred to.

"(4) No plan for any changes or alterations or remodeling of any of the buildings upon said property has been made or adopted by plaintiff and approved by the Governor of the state of Texas.

"(5) No plan or any alteration or changes or remodeling of any of said buildings had been prepared by the Governor of the state of Texas and submitted to plaintiff for consideration by plaintiff.

"(6) Plaintiff has never surrendered said property nor the care or custody of same to any one, but has retained such possession, care, and custody ever since the delivery of the property to plaintiff.

"(7) The defendants in their official capacities alleged in plaintiff's petition entered upon the said property prior to the filing of plaintiff's petition, and without the consent of plaintiff were at the time of the filing of said petition engaged in tearing down certain of the improvements upon said property, making excavations thereon for rebuilding certain of the improvements thereon and for the erection of new improvements thereon, and were rebuilding certain of the improvements thereon and remodeling certain of the improvements thereon.

"(8) This work was being done without any plan as to what future improvements would be made upon the property or what remodeling of the property would be done, the evidence showing that the work was being done without any fixed or definite plan, and the defendants were unable to inform the court what remodeling of any improvements was contemplated, nor what improvements were contemplated, nor what changes in the present building were contemplated by them or by the Governor of the state."

Appellee was incorporated for the purposes, and given the authority, as follows: "First, to perpetuate the memory and spirit of the men and women who have achieved and maintained the independence of Texas. Second, to encourage historical research into the earliest records of Texas, especially those relating to the Revolution of 1835, and the events which followed; to foster the preservation of documents and relics, and to encourage the publication of records of individual service of soldiers and patriots of the Republic. Third, to promote the celebration of March 2d (Independence Day), and April 21st (San Jacinto Day); to secure and hallow historic spots by erecting monuments thereon; and to cherish and preserve unity of Texas, as achieved and established by the fathers and mothers of the Texas Revolu-

tion. This association may have and hold, by purchase, grant, gift, or otherwise, real estate on which battles for the independence of Texas were fought; such monument or monuments as may be erected thereon; and burial grounds where the dead, who fought and died for Texas independence, are buried; and personal property, consisting of books, manuscripts, and other historical records, relating to the early history of Texas; and relics."

[1] After providing for the purchase of the land causing this controversy, the act of January 26, 1905, provided: "Upon the receipt of the title to said land, the Governor shall deliver the property thus acquired, together with the Alamo Church property already owned by the state, to the custody and care of the Daughters of the Republic of Texas, to be maintained by them in good order and repair, without charge to the state, as a memorial to the heroes who immolated themselves upon that hallowed ground; and by the Daughters of the Republic of Texas to be maintained or remodeled upon plans adopted by the Daughters of the Republic of Texas, and approved by the Governor of Texas; provided that no alterations shall be made in the Alamo Church proper, as it now stands, except such as are absolutely necessary for its preservation. All of said property being subject to future legislation by the Legislature of the state of Texas." Undoubtedly, that law, in plain and unequivocal terms, gave appellee the custody of the property in question and imposed upon it the duty and burden of keeping it in good order and repair without expense to the state, and under that law appellee took possession of the property and assumed the responsibility of maintaining it in good order and repair. It is apparent that by "care and custody" the state intended to place appellee in possession and give it exclusive and absolute control, within the limitations prescribed in the law, over the property. The state intended to and did lift the responsibility from itself of caring for and maintaining the property and placed those burdens upon appellee. No other reasonable intendment can be deduced from the language of the act. No limitations of the powers granted to appellee were made except that its manner of maintenance or remodeling of the property or its improvements should meet with the approval of the Governor, and that the Mission Church should not be changed or altered unless it was absolutely necessary for its preservation. Within those limitations the possession and authority over the property were exclusive and supreme. Those statutory checks and limitations of the power of the custodian of the Alamo property were enacted to prevent any ill-considered change being made in the property which the state desired to be preserved and cherished "as a sacred memorial to heroes who immolated themselves upon that hallowed ground."

[2, 3] Under the act of 1905, appellee had the right of possession, custody, care and control of the Alamo property, and has to this day, unless the authority has been canceled and destroyed by subsequent legislation, and that is the contention of appellants. The law relied on as a repealing act is an item in the appropriation act of 1911 (Laws 1911, p. 6) which is: "For the improvement of the Alamo property belonging to the state of Texas, in the city of San Antonio, to be expended under the direction of the superintendent of public buildings and grounds, upon the approval of the Governor, $5,000.00." There is no mention of the statute of 1905 giving the Daughters of the Republic of Texas control of the property, and the contention is that by implication it deprives it of the custody given to it by the former law.

Repeals by implication are not favored by the courts of the country, and a statute will not be held to repeal an existing one unless there is an irreconcilable repugnancy between them, or unless there is an evident design upon the part of the Legislature to supersede all prior legislation in connection with the subject-matter and to enact a complete law in regard to it. The item from the appropriation bill will not stand such a test; but, on the other hand, it is in perfect harmony with the existing law and is merely supplementary thereto. There is not one word in it that indicates any desire or intention to take the custody of the Alamo property from the hands of the association of Texas women which had accepted the burdens imposed upon it by the state, but, on the other hand, it merely loosened the purse strings of the state in order to assist in the belated work of preserving these relics of our heroic dead.

The only change, if any, made by the appropriation item of 1911, was to give the superintendent of public buildings the right to enter the Alamo property for a specific purpose, that of directing the expenditure of the money appropriated. The general custody of the property was not disturbed. The right of maintenance and remodeling the improvements remained the same. Before the appropriation could be used, and before the state officer could direct its disbursement, appellee had to make plans for remodeling, and those plans had to be approved by the Governor. No one had the power and authority to provide plans or to have them executed but the Daughters of the Republic of Texas. To the amount of $5,000 the superintendent of public buildings, with the approval of the Governor, could superintend the disbursement of the money in making changes or improvements in the property. His authority began and ended with the direction of the disbursement of the $5,000.

[4] Appellee being undoubtedly in exclusive possession and having the care and cus-

tody of the Alamo property, by the consent of the state of Texas, expressed through its legislative department, had the right and authority to repel the invasion of the property by any trespasser. It stood in the same relation to the property that any other actual, exclusive possessor of land does against any mere stranger or wrongdoer, who has neither title to the possession, nor authority from the owner. No one but the state of Texas, the owner of the land, could oust it of its rightful possession, and it was not only the privilege, but the duty, of the custodian of the property to defend its possession against any trespasser. Linard v. Crossland, 10 Tex. 462, 60 Am. Dec. 213; Wilson v. Palmer, 18 Tex. 592; Bonner v. Wiggins, 52 Tex. 125; Parker v. Railway, 71 Tex. 132, 8 S. W. 541; Pacific Express Co. v. Dunn, 81 Tex. 85, 16 S. W. 792; National Bank v. Brown, 85 Tex. 80, 23 S. W. 862; Watkins v. Smith, 91 Tex. 589, 45 S. W. 560.

The title to the Alamo property is in the state of Texas, and it alone has the right and authority to place the possession, control, and custody of it in the hands of another; such permission to control and possess being expressed through its only medium of expression, in such case, the legislative branch of the government. It alone can legislate, and to it and the Constitution of the state the other branches of the government must look for power, guidance, and authority.

[5] Within constitutional limits its power in the enactment of laws is supreme.

[6] It had the power and authority to create the office of superintendent of public buildings and grounds, and to clothe him with authority to take charge and control of all public buildings, grounds, and property, and it seems clear that it could take the charge and control of any public property away from him and place such custody in the keeping of some other agency. The superintendent of public buildings is a legislative office, which may have its powers increased or restricted, or the office altogether abolished, by the Legislature, and the Legislature was acting within its constitutional powers when it placed the custody of the Alamo property in other hands than those of the superintendent of public buildings. This is what the Legislature intended to do by the act of 1905, and this is clearly evidenced by its adoption of the Revised Civil Statutes, at the regular session of 1911, containing the law of 1905 as to the Alamo property, which is made article 6394, in title 113, relating to public buildings, grounds, and parks, wherein is found the only authority for the appointment of the superintendent of public buildings. Under that same title are provisions for the appointment of San Jacinto park commissioners, who are not given the care and custody of the park, but who are authorized "to advise with and assist the superintendent of public grounds in the improvement, care, and preservation of the lands now owned and hereafter acquired by the state, known as the San Jacinto Battlefield." No such divided or concurrent authority is given by article 6394, relating to the Alamo.

We do not think that the contention that, although the Alamo property was "delivered to the care and custody of the Daughters of the Republic of Texas," the custody was not exclusive, can be sustained. The care and custody of person or property carries with it the idea of exclusive possession. This may be illustrated by our divorce laws, which authorize district courts to "give the custody and education of the children to either father or mother," and which, every one is constrained to admit, carries with it authority to one of the spouses not conferred on the other. It means a custody exclusive of the other. We cannot conceive of one person having the "care and custody" of property, charged with repairing and maintaining it, and another without a grant of authority taking possession and making changes and improvements in the property. This could not be done even by the owner of the property who had placed his property indefinitely in the hands of another, to care for it, unless done in a legal way to protect the property. The state of Texas had recognized the exclusive possession of the property by the Daughters of the Republic of Texas ever since the passage of the law of 1905, and the officers sued only claim the right to disturb that possession by authority of the quoted clause in the appropriation bill of 1911.

[7] The state has not attempted by legislative action to resume possession of the Alamo property, and has not authorized appellants to interfere in any manner with the possession and custody of the property unless appellee should invoke such interference by inviting the expenditure of the money appropriated by the Legislature. It has not done this, and the officers sued, acting without legislative sanction or authority, can be sued as any other trespasser upon the rights of possession would be sued. They are in no sense representing the state of Texas, and a suit against them is not a suit against the state. United States v. Schwalby, 8 Tex. Civ. App. 679, 29 S. W. 90; Id., 87 Tex. 604, 30 S. W. 435. In that case Gen. Stanley and other military officers of the United States were trespassers upon land owned by Mrs. Schwalby and they were sued by her. This court held that the United States was not sued, but that the officers were sued as trespassers. The Supreme Court of Texas refused a writ of error, and in its opinion on the application it was held: "The proposition that Stanley and his co-defendants, although officers of the United

States, and in possession of the lot under and by virtue of the authority of the United States, could not be sued for the property and rents, is no longer open to contention." That cause was taken by writ of error to the Supreme Court of the United States (147 U. S. 508, 13 Sup. Ct. 418, 37 L. Ed. 259; 162 U. S. 255, 16 Sup. Ct. 754, 40 L. Ed. 960), and that tribunal agreed with this court that the officers could be sued as trespassers, but held that the title of the United States to the land· was good, and that judgment should have been rendered in favor of the officers. There are other points discussed in that case, but none, except that mentioned, is applicable to this case.

The noted case of United States v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171, involving Arlington, the estate of Gen. Robert E. Lee, fully sustains the judgment of this court in the Schwalby Case, and that court quoted this strong presentation of the matter raised in this case, from Chief Justice Marshall in Osborn v. U. S. Bank, 9 Wheat. 738, 6 L. Ed. 204: "If the state of Ohio could have been made a party defendant, it can scarcely be denied that this would be a strong case for an injunction. The objection is that, as the real party cannot be brought before the court, a suit cannot be sustained against agents of that party; and cases have been cited to show that a court of chancery will not make a decree, unless all those who are substantially interested be made parties to the suit. This is certainly true where it is in the power of the plaintiff to make them parties, but if the person who is the real principal, the person who is the true source of the mischief, by whose power and for whose advantage it is done, be himself above the law, be exempt from all judicial process, it would be subversive of the best-established principles to say that the laws could not afford the same remedies against the agent employed in doing the wrong, which they would afford against him could his· principal be joined in the suit." We need not go to that extent in this case, because no authority was shown to have been given by the state of Texas to appellants to invade the rightful possession of the property by appellee. Again, in the Osborn Case the Supreme Court said: "In deciding who are parties to the suit, the court will not look beyond the record. Making a state officer a party does not make the state a party, although her law may have prompted his action, and the state may stand behind him, as a real party in interest. A state can be made a party only by shaping the bill expressly with that view, as where individuals or corporations are intended to be put in that relation to the case."

In the Lee Case Mr. Justice Miller said: "In the case supposed, the court has before it a plaintiff capable of suing, a defendant who has no personal exemption from suit, and a cause of action cognizable in the court; a case within the meaning of that term, as employed in the Constitution and defined by the decisions of this court. * * * What is the right as established in this case? It is the right to the possession of the homestead of plaintiff, a right to recover that which has been taken from him by force and violence and detained by the strong hand. This right being clearly established, we are told that the court can proceed no further, because it appears that certain military officers, acting under the orders of the President, have seized this estate, and converted one part of it into a military fort and another into a cemetery. It is not pretended, as the case now stands, that the President had any lawful authority to do this, nor that the legislative body could give him such authority, except upon payment of just compensation. The defense stands here solely upon the absolute immunity from judicial inquiry of every one who asserts authority from the executive branch of the government, however clear it may be made that the executive possessed no such power." The suit was sustained by that court.

[8] Appellee is a private corporation chartered by the state of Texas, and, in the absence of charter or statutory provisions to the contrary, has the same capacity to sue and be sued as a natural person. The powers to sue and be sued are among the incidental and implied powers, from the earliest period attributed to corporations, and need never be expressly conferred. Clark & Marshall, Priv. Corp. § 258. Having a possessory right in the property, the corporation had the authority to prosecute a suit against a trespasser on the property as hereinbefore indicated.

[9] It was not necessary, in order to sustain a suit to prevent a trespass, that authority should be given by the statute giving the corporation the custody of the property. That statute carried with it the grant of every power needed to carry into effect the purposes of the statute. Such power was incidental to powers granted. The case of Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L. Ed. 773, has no application to the facts of this case.

[10] It will be presumed that the suit was authorized by the corporation, as it was sanctioned by its president and other officers. Olcott v. Gabert, 86 Tex. 121, 23 S. W. 985. Appellants had no right to inquire into such authority and did not, on the trial, attempt to do so.

[11] It was not a condition precedent to instituting the suit that appellee should allege or prove that it was executing the trust reposed in it. If it is not performing the trust, that is a matter between it and the state of Texas, to be inquired into and met by the Legislature. No power has been vested in any officer of the state government to set aside the law and take possession of

the property because the corporation is not living up to its agreement. The state has the authority to legislate further in regard to the matter, but it has not done so in a way to interfere with the law of 1905.

[12, 13] The claim that the act of 1905 is contrary to and in violation of article 1, § 26, of the Constitution of Texas, in regard to perpetuities and monopolies, cannot be sustained. That section is: "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed." The power granted to the Daughters of the Republic of Texas was not a perpetuity, because appellants are contending that they could put an end to it, and the law itself states "all of said property being subject to future legislation of the state of Texas." The definition of a monopoly precludes it from being applied to a grant of power to an association to assume the burden of caring for, preserving, and repairing a piece of property belonging to the state. "A monopoly consists in the ownership or control of so large a part of the market supply or output of a given commodity as to stifle competition, restrict the freedom of commerce, and give the monopolist control over prices." Black's Law Dictionary: Queen Ins. Co. v. State, 86 Tex. 250, 24 S. W. 397, 22 L. R. A. 483. That is the monopoly the Constitution condemns, and not the assumption of a burden which deprives no citizen of any privilege or right, and brings no financial gain to the person granted certain authority. The cases cited have no application to a case of this character. No credit or aid was given by the state to the corporation. If the property was, or is, revenue producing, the revenue belongs to the state of Texas, for the simple and plain reason that no revenues have been granted to appellee. That is a matter which can have no bearing on this suit.

The act of 1905 is a general and not a special act. It applies to the whole state, and not any particular community or particular persons. This question is not raised by any proper assignment of error, but is sought to be presented by a proposition under an assignment which refers to an entirely different matter.

The eighteenth assignment cannot be sustained. The evidence failed to show that any plan had been proposed by the Governor for the improvement of the property, and therefore there could have been no ratification of the same. The matter ratified was the tearing away of the woodwork and other rubbish but the record fails to indicate any ratification of any plans for improvement or repairs.

[14, 15] No attempt was made to prove that appellee had not elected a board of directors; but, if the testimony had shown that fact, it would not have deprived appellee of the right to prosecute the suit. Although appellee may not have complied with all the statutory requirements, it would still be a de facto corporation, and its corporate existence cannot be attacked in a collateral proceeding. Clark & Marshall, Priv. Corp. § 80, pp. 226, 227. The corporate existence of appellee has been fully recognized by the state. The facts show a board of directors was in existence under the name of executive committee.

[16] This has been fully recognized in De Zavala v. Daughters of the Republic, 124 S. W. 160, and writ of error denied by the Supreme Court. As held in that case, it was not necessary to allege nor prove that the suit was authorized by the board of directors.

[17] Appellee did show that the plans being followed by appellants were injurious, and that its lawful possession had been invaded, and that was a sufficient basis for a restraining order. Burnley v. Cook, 13 Tex. 586, 65 Am. Dec. 79; Buskirk v. King, 72 Fed. 22, 18 C. C. A. 418.

We have given all of the assignments careful attention, and have arrived at the conclusion that the exclusive custody and care of the Alamo property has been given to appellee by the state; that it alone can make plans, which, to be effective, must be approved by the Governor; that the appropriation item of 1911 did not repeal any part of the law of 1905; that the custody and care of the Alamo property is still confided to the Daughters of the Republic of Texas; and that appellants were trespassers thereon.

The judgment is affirmed.

### On Motion for Rehearing.

Appellants pretermit all other questions raised in the brief by stating: "The sole question to be determined is: Did the court err in holding that the act of the Thirty-Second Legislature of Texas did not repeal the entire act of January 26, 1905?"

[18] In article 3, § 35, of the Constitution of Texas, it is provided that "no bill (except general appropriation bills, which may embrace the various subjects and accounts for and on which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title." That section does not give any authority to pass new laws or repeal old ones through the medium of a general appropriation bill, and even if the Legislature had intended to repeal the act of 1905, by an item in the appropriation bill, it would be invalid and unconstitutional, for such bills are excepted from the general rule only for the reason that they might appropriate money for the various purposes of government, without naming each item in the title, which would render them cumbersome and very onerous. It was never contemplated that a valid existing law should be repealed by an appropriation of money, even though, as is not the case in this instance, it be totally inconsistent with the terms of the existing law. No case has been cited, or

has come to our notice, where an existing law has been repealed by the appropriation of money in connection with the subject-matter of the existing law. A statute might be brought into a state of "innocuous desuetude," so that it might languish, and, languishing, perchance might die of inanition by a failure to appropriate funds necessary to put it into operation, but the Legislature attempted a novel performance if it endeavored to destroy a law by the appropriation of money to carry it into effect.

Admitting that a repealing act might be sandwiched among the various and sundry items of a general appropriation act, still such an act would not be a subject or account for and on which moneys are appropriated, and should be expressed in the title. It was never contemplated that an act should be repealed by an item in an appropriation bill, and there is nothing in the item appropriating the $5,000 to improve the Alamo property that evinces any desire upon the part of the Legislature to take the custody of the property from those to whom it had been intrusted by law. We must presume that, if the Legislature desired to relieve the association of Texas women of the custody and care of the Alamo property, it would have met the question in an open, manly way, and would not, at a called session, convened for certain purposes, have slipped an item into a general appropriation bill, in order to repeal one of the statutes of the state.

[19] Even if the item, which is dignified by appellants by being called a "repealing act," had been intended as an amendment of the act of 1905, it would not be in harmony with article 3, § 36, of the Constitution, which provides that no law shall be amended by reference to its title, "but in such case the act reviewed or the section or sections amended shall be re-enacted and published at length." No reference whatever is made in the appropriation item to the act of 1905, by title or otherwise. The sole object of the appropriation of 1911 was to assist the trustees and custodians of the Alamo in caring for and improving the property.

[20] As to the charge that the Daughters of the Republic of Texas have not made any efforts to improve the property, and have not acted in good faith with the state, this court has nothing to do; but that matter, if deserving of presentation to any branch of the state government, must be addressed to the Legislature, which gave appellee its authority and alone can take it away.

This court has not held, as so zealously, if not intemperately, asserted by appellants in their motion, that the money appropriated should be distributed by the Daughters of the Republic of Texas, but have held that no officer of the state government has the authority to dispossess that organization of the custody of property confided to it by the Legislature. This court has nothing to do with the question of the expenditure of the money appropriated, and does not propose to be led off into the consideration of such questions, which have no bearing whatever upon the law and merits of this case.

The motion for rehearing is overruled.