

# The Attorney General of Texas

August 4, 1980

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Kenneth H. Ashworth
Coordinating Board
Texas College and University System
P. O. Box 12788, Capitol Station
Austin, Texas 78711

Opinion No. MW-215

Re: Implementation of the Texas State College and University Employees Uniform Insurance Benefits Act, Ins. Code art. 3.50-3.

Dear Commissioner Ashworth:

You ask several questions concerning the Texas State College and University Employees Uniform Insurance Benefits program created by the provisions of article 3.50-3 of the Insurance Code. You first ask whether the institutions of higher education in Texas are required to adopt and implement a program of insurance premium payments for retired employees.

Article 3.51-5 of the Insurance Code, enacted in 1975, provides that the "costs of group life and health insurance premiums to persons retired under the Teacher Retirement Act, who at the time of their retirement were employed by . . . a Texas senior college or university . . . shall be fully paid from the funds of such . . . institution. . . ." Article 3.50-3 of the Insurance Code enacted in 1977, states that one of its purposes is

> Sec. 2(f)   to recognize the long and faithful service and dedication of employees of the Texas state colleges and universities and to encourage them to remain in service until eligible for retirement by providing health insurance and other group insurance benefits for such employees;

Institutions covered by the Act are required to "contribute monthly to the cost of each insured employee's coverage. . . ." Ins. Code art. 3.50-3, § 12. The Act defines "employee" to include employees who retire under the Teachers Retirement System of Texas or the Optional Retirement Program established by articles 51.351 - 51.358 of the Texas Education Code. Ins. Code art. 3.50-3, §§ 3(a)(2), (4). In our opinion, article 3.50-3 clearly requires state agencies of higher education to implement a program of insurance premium payments for retired employees.

You next ask whether the institutions of higher education have authority to use institutional line item appropriations for other items to support the program for retired employees. Section 4b of article IV of the General Appropriations Act for 1979-81 states that "insurance premiums where authorized by law . . . may be purchased from appropriated funds." Section 4d states that " 'General Operating Expenses' as used in the medical and dental institutions shall include . . . insurance premiums where authorized by law. . . ." Section 5 provides that, with the approval of the governing board, "transfers may be made between the items of appropriations for the general academic institutions" regardless of whether the items are general revenue or local funds. In our opinion, institutions may transfer appropriation items to pay for insurance premiums for retired employees as permitted by article IV, sections 4b, 4d, and 5 of the General Appropriations Act.

You next ask whether article 3.50-3 of the Insurance Code obligates junior college districts to implement a program of insurance premium payments for retired employees. Article 3.50-3 defines "employees" to include persons who have retired from junior college teaching. Sec. 3(A). Article 3.51-5 of the Insurance Code does not require junior colleges to pay insurance premiums for retired employees. However, its provisions are to be construed in harmony with the more recently enacted article 3.50-3, which is clearly applicable to retired junior college employees. See Goldman v. State, 277 S.W.2d 217 (Tex. Civ. App. — Amarillo 1954, writ ref'd n.r.e.) (statutes in pari materia must be harmonized); see also Attorney General Opinion H-1114 (1978). A question has arisen as to whether the state may control funds of a junior college district other than appropriated funds. Junior college districts are political subdivisions of the state. Attorney General Opinion M-707 (1970); see Shepherd v. San Jacinto Junior College Dist., 363 S.W.2d 742 (Tex. 1963); King's Estate v. School Trustees of Willacy County, 33 S.W.2d 783 (Tex. Civ. App. — San Antonio 1930, writ ref'd). They are established pursuant to statutes enacted by the legislature. See Educ. Code ch. 130. In order to receive state appropriations, they must comply "with all existing laws, rules, and regulations governing the establishment and maintenance of public junior colleges. . . ." Educ. Code § 130.003(b)(3). They acquire local funds pursuant to state law. See Tex. Const. art. VII, § 3; Educ. Code § 130.121 (tax assessment). There is ample precedent for legislative control of local junior college funds. Educ. Code § 130.084; see Educ. Code § 20.48; Attorney General Opinion MW-38 (1979). Of course, particular funds may be earmarked for special purposes. See Educ. Code § 130.123 (revenue bonds for acquisition of facilities). However, we find no general prohibition against legislation which would alter or control the expenditure of nonappropriated funds by junior colleges.

Your next question is as follows:

> If the cost of the premium payment per employee for the basic coverage(s) prescribed under Article 3.50-3 of the Insurance Code exceeds the per employee amount appropriated in the General Appropriations Act for the purpose of insurance premium payments, do the institutions have an obligation to pay the portion of the premium that exceeds the amount appropriated per employee and included in the General Appropriations Act? If so, do

> the institutions have the authority to use funds included in other line item appropriations in view of Section [25] of Article IV of the General Appropriations Act?

Section 11 of article 3.50-3 provides in part:

> From the first day of employment, each active full-time employee who has not waived basic coverage or selected optional coverages shall be protected by a basic plan of insurance coverage automatically. The premium for such coverage shall not exceed the amount of the employer contribution. . . .

In our opinion, this provision contemplates a basic coverage that will be fully funded by the employer contribution. Section 12 requires that institutions and agencies covered by the Act "shall contribute monthly to the cost of each insured employee's coverage no less than the amount appropriated therefor by the legislature in the General Appropriations Act. . . ." Section 25 of article IV of the current Appropriations Act provides that the state's contribution for employee premiums on group life, health, and accident policies should not exceed $35 per month in fiscal 1980 and $40 per month in fiscal 1981.

General legislation enacting or repealing a statute may not be included in a general appropriation bill. Tex. Const. art. III, § 35; Moore v. Sheppard, 192 S.W.2d 559 (Tex. 1946); Conley v. Daughters of the Republic of Texas, 151 S.W. 877 (Tex. Civ. App. — San Antonio 1912), aff'd, 156 S.W. 197 (Tex. 1913). In order to be valid, riders to the Appropriations Act must be related to and germane to the act. Jessen Associates, Inc. v. Bullock, 531 S.W.2d 593 (Tex. 1975). If we construe section 25 to limit the permissible contribution under section 12 of article 3.50-3 to an amount less than the premium for the basic plan required by section 11, it will be inconsistent with those provisions of general law, and therefore an invalid attempt to enact general law in the general appropriations act. Statutes are to be construed to render them constitutional and valid where possible. Hamrick v. Simpler, 95 S.W.2d 357 (Tex. 1936). Section 25 can be constitutionally construed as a limitation on the expenditure of appropriated funds. Thus, institutions receiving funds in article IV of the General Appropriations Act may spend from appropriated funds no more than $35 per employee premium per month in 1980 and no more than $40 per employee premium per month in 1981. Since section 12 of article 3.50-3 authorizes covered institutions and agencies to contribute monthly "no less than the amount appropriated therefor by the legislature" they may contribute more than the amounts appropriated. (Emphasis added). Since section 11 requires the premium for the basic plan to be fully funded from the employer contribution, it obligates the employer to pay the excess over the amount appropriated. However, since section 25 of article IV limits the expenditure of appropriated funds, the excess must be paid from nonappropriated funds.

You finally ask whether institutions must contribute to the premium payment of employees paid from nonappropriated funds an amount equal to the premium contribution for employees included in line item appropriations. You also inquire about the source of such premium payments. Section 12 of article 3.50-3 provides in part:

Each institution and agency covered under the provisions of this Act shall contribute monthly to the cost of each insured employee's coverage . . . as determined by the governing board of the institution in its respective official operating budget, if the employees are compensated from funds appropriated by such budgets rather than by the General Appropriations Act. . . .

This provision gives the governing board some discretion as to the amount of premium and the sources within its operating budget. Sections 4b and d of Article IV of the General Appropriations Act permit payment of "insurance premiums where authorized by law" without limiting this benefit to persons compensated by appropriated funds. We therefore believe the governing board may use either appropriated or nonappropriated funds to pay insurance premiums of employees compensated by nonappropriated funds, for example auxiliary employees. If appropriated funds are used, the limitations of premium payments found in section 25 of article IV will be applicable. Of course, the monthly contribution must be large enough to fund the premium for the basic plan to which each employee is entitled under section 11.

### SUMMARY

Article 3.50-3 requires institutions of higher education in Texas, including junior colleges, to fund insurance premiums for retired employees. They may use appropriated funds for that purpose pursuant to sections 4b, 4d, and 5 of article IV of the General Appropriations Act, and subject to the limitations on dollar amount in section 25. If the cost of the premium payments for the basic coverage prescribed under section 11 of article 3.50-3 exceeds the per employee amount appropriated for that purpose, the institution must pay the additional amount.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

Prepared by Susan Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Martha Allan
David B. Brooks
Susan Garrison
William G. Reid